# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-20-00131-CV

**Sterling/Suggs Limited Partnership, Neal E. Suggs, and Nadine R. Suggs, Appellants**

**v.**

**Canyon Lake Island Property Owners Association, Appellee**

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. C2012-1457B, THE HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Sterling/Suggs Limited Partnership, Neal E. Suggs, and Nadine R. Suggs (collectively, the Suggses) appeal from the district court's order granting Canyon Lake Island Property Owners Association's (CLIPOA's) second motion to enforce the Rule 11 settlement agreement. For the following reasons, we reverse the order and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

In 2012, CLIPOA sued the Suggses regarding an easement dispute, and the long procedural history of this case is well-known to the parties. *See Canyon Lake Island Prop. Owners Ass'n v. Sterling/Suggs Ltd. P'ship*, No. 03-14-00208-CV, 2015 WL 3543125, at *1–2 (Tex. App.—Austin June 5, 2015, pet. denied) (mem. op.) (describing background of case in

earlier procedural posture). We limit our discussion here to the relevant procedural history and undisputed factual background necessary to decide this appeal. *See* Tex. R. App. P. 47.1, .4.

During trial in early 2017, the parties announced a Rule 11 settlement agreement in open court and dictated the terms on the record. CLIPOA drafted related settlement documents,[1] but the Suggses refused to execute them. CLIPOA then moved to enforce the Rule 11 agreement. At the hearing on the motion, the district court ordered the parties to binding arbitration. In May 2018, the arbitrator signed an order, stating:

> Defendant Suggs contend the CLIPOA Board of Directors acting through [CLIPOA's counsel] did not have authority to enter into the Rule 11 Agreement, there was Mutual Mistake or Impossibility, a Conflict exist between CLIPOA and Cindy Griffin (an owner of property in CLIPOA), and urged a Motion to Enforce was not the proper method to be used to enforce a Rule 11 agreement. The Plaintiffs filed a response in opposition to each of those assertions.
>
> The <u>parties do agree</u> however that <u>CLIPOA did not file the bylaws of CLIPOA until June 2017</u>. In Plaintiff's Response to Defendant's Arbitration position they concede they did not have the bylaws of CLIPOA recorded in the real property records at the time of the Settlement Agreement. This admission is significant for the following. **V.T.CA 202.001** of the Texas Property Code defines "**Dedicatory instruments**" to be any document governing the establishment, maintenance, or operation of a residential subdivision, planned unit development, condominium or townhouse regime, or any similar planned development. **Section (1(a)** includes the **"bylaws"** of a property owners association. **V.T.C.A. Section 2002.006(b)** of the Property Code states **"<u>a Dedicatory instrument has no effect until the instrument is filed in accordance with this section.</u>"**
>
> The undersigned Arbiter would have found the Rule 11 Agreement to be Enforceable but the undersigned Arbiter finds CLIPOA did not have the authority to enter into any agreement as they had not filed their bylaws which would create and empower the Board of Directors to act. As such, the CLIPOA Board of Directors had no legal authority to act and as such, there is no enforceable Rule 11 agreement.

---

[1] These include a settlement agreement, easement agreement, declaration of restrictive covenants, joint motion to dismiss with prejudice, and order of dismissal with prejudice.

(Emphases, capitalization, and grammatical and typographical errors in original.) CLIPOA moved for reconsideration, which the arbitrator denied by order that states, in part:

> Plaintiff urges CLIPOA may operate under Tex. Bus. Orgs. Code § 22.201 which provides a statutory grant of authority for managing the affairs of a non-profit corporation. Texas Government Code § 311.026 precludes this argument as it requires a more specific statute to control over a general statutory authority. With the specific statutory authority of Tex. Prop. Code § 202.001 directly governing property owners associations, it must be given effect.

> Arbiter continues to find CLIPOA did not have the authority to enter into any agreement as they had not filed their bylaws which would create and empower the Board of Directors to act. As such, the CLIPOA Board of Directors had not legal authority to act and as such there is no enforceable Rule 11 agreement.

The district court adopted both orders.

In September 2019, CLIPOA filed its second motion to enforce the Rule 11 settlement agreement. CLIPOA noted that the Legislature amended Chapter 22 of the Texas Business Organizations Code, effective September 1, 2019, by adding Subchapter J: "Ratification of Defective Corporate Acts; Proceedings" (the RDCA). *See* Act of May 22, 2019, 86th Leg., R.S., ch. 664, § 1, 2019 Tex. Gen. Laws 1922, 1922–29 (codified at Tex. Bus. Orgs. Code §§ 22.501–.516). CLIPOA attached to its motion a September 16 resolution adopted by CLIPOA's board of directors. CLIPOA alleges that the resolution ratified "the 'defective corporate act' of entering into the Settlement Agreement on February 1, 2017 without the proper authority due to the unfiled bylaws" and that therefore "the Settlement Agreement should be enforced since the issue of [CLIPOA]'s lack of authority has been ratified through the Resolution, which under the [RDCA] relates back to the date the Settlement Agreement was entered into."

The Suggses responded, arguing that "[t]he defect was failure to file the bylaws of record, not a defective corporate act" as defined by the RDCA, and that "CLIPOA cannot ratify its acts taken in violation of the requirements of the Texas Property Code." Thus, according to the Suggses, the RDCA "does not absolve CLIPOA of its failure to comply with the Property Code"; "[t]he Property Code requires dedicatory instruments—including bylaws of a property owner's association—to be filed of record, because these instruments affect real property and should be filed to give the public notice"; and "CLIPOA now seeks to internally ratify its failure to provide public notice, which is neither the intent nor the language of the [RDCA] upon which it relies." In a motion to reconsider the ruling on CLIPOA's second motion to enforce the Rule 11 settlement agreement, which the Suggses filed prior to the signing of an order on CLIPOA's motion, the Suggses also argued that "CLIPOA now asks the District Court to reconsider and overturn the arbitration award, but CLIPOA does not ask for a vacatur"; that "[d]espite clear law to the contrary, CLIPOA's motion assumes the arbitration ruling is an ordinary ruling that can simply be reconsidered by the trial judge, on any basis the trial judge deems appropriate"; and that "[b]ecause CLIPOA has failed to bring any evidence that vacatur is warranted, its motion for vacatur (incorrectly titled a second motion to enforce) must be denied."[2]

In November 2019, the district court granted CLIPOA's second motion to enforce the Rule 11 settlement agreement, ordered that the Suggses execute the settlement documents "within ten days of the date this Order becomes final and unappealable," and denied the Suggses' motion to reconsider. The Suggses requested findings of fact and conclusions of law, which the district court signed on January 26, 2020. The Suggses then perfected this appeal.

---

[2] In their motion to reconsider, the Suggses also raised the "additional problems" of "mutual mistake" and "impossible situation," attached "the entire Defendants' Arbitration Position Statement and Memorandum," and "ask[ed] the Court to reconsider same."

4

## DISCUSSION

On appeal, the Suggses argue that the district court's order granting CLIPOA's second motion to enforce the Rule 11 settlement agreement must be reversed because (1) "vacatur was improper as a matter of law," (2) "the settlement agreement is unenforceable because CLIPOA's representative lacked authority to enter into the agreement, and CLIPOA failed to obtain the consent of its members," and (3) "a litany of mutual mistakes and impossibility of the terms of the agreement render the agreement legally unenforceable."[3]   In response, CLIPOA asserts that "[n]o vacatur ever occurred" and that "[i]nstead, [the district court] decided a new, independent development in Texas law that occurred after the arbitration was ended [and] retroactively cured the authority defect that he found existed in February 2017." Because we conclude that CLIPOA's subsequent alleged ratification of the Rule 11 settlement agreement did not cure a "defective corporate act" as defined by the RDCA, we neither address whether the district court effectively and improperly vacated the arbitration order nor consider the Suggses' other arguments on appeal.[4]

---

[3]   Generally, a party seeking enforcement of a settlement agreement, where consent is withdrawn, must pursue an action based on proper pleading and proof.  *See, e.g.*, *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996) (per curiam) ("Where consent is lacking, however, a court may not render an agreed judgment on the settlement agreement, but rather may enforce it only as a written contract.  Thus, the party seeking enforcement must pursue a separate breach-of-contract claim, which is subject to the normal rules of pleading and proof."  (citing *Padilla v. LaFrance*, 907 S.W.2d 454, 462 (Tex. 1995))).  But the parties do not raise any complaint on appeal regarding CLIPOA's procedure taken to enforce the settlement agreement.

[4]   CLIPOA admits on appeal that because the arbitrator "had already made the decision" and "denied [CLIPOA]'s Motion for Reconsideration," "[t]he ship had sailed on that argument [to vacate the arbitration decision], leaving the settlement agreement enforceable but for the authority of the Board of Directors of [CLIPOA] to approve it because the Bylaws were not filed at the time the agreement was reached."  Accordingly, as the issue is not before us, we do not opine on the merits of the arbitration order.

A district court's decision to enforce a rule 11 agreement is reviewed for abuse of discretion. *Infiniti Hotel Grp. v. Patel*, No. 03-09-00610-CV, 2011 WL 1344605, at *6 (Tex. App.—Austin Apr. 8, 2011, pet. denied) (mem. op.) (citing *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 659 (Tex. 1996) (per curiam)). "[A] trial court has no discretion in determining what the law is or in applying it to the facts" and "abuses its discretion if it fails to correctly analyze or apply the law." *In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (orig. proceeding) (per curiam). Here, the dispositive issue on appeal turns on a question of statutory interpretation, which we review de novo. *Cadena Comercial USA Corp. v. Texas Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017). "When interpreting statutes, we presume the Legislature's intent is reflected in the words of the statute" and "analyze statutes 'as a cohesive, contextual whole, accepting that lawmaker-authors chose their words carefully, both in what they included and in what they excluded.'" *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018) (quoting *Sommers v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 754 (Tex. 2017)).

As relevant here, the RDCA provides that "a defective corporate act is not void or voidable solely as a result of a failure of authorization if the act is: (1) ratified in accordance with this subchapter."[5] Tex. Bus. Orgs. Code § 22.502. The RDCA defines "[d]efective corporate act" to include:

> any act or transaction purportedly taken by or on behalf of the corporation that is, and at the time the act or transaction was purportedly taken would have been, within the power of a corporation to take under the corporate statute, but is void or voidable due to a failure of authorization.

---

[5] The Suggses argue that "CLIPOA incorrectly contends that Subchapter J should be applied retroactively despite the absence of language provided for its retrospective application." CLIPOA responds that the RDCA expressly provides for retrospective application. *See* Tex. Bus. Orgs. Code §§ 22.501(6)(A), .509. We assume without deciding that CLIPOA is correct.

6

*Id.* § 22.501(2)(B). The RDCA also defines both "[c]orporate statute" and "[f]ailure of authorization." *Id.* § 22.501(1), (4). The former means "this code, the former Texas Non-Profit Corporation Act, or any predecessor statute of this state that governed the action or the filing." *Id.* § 22.501(1) (internal citation omitted). The latter, as relevant here, means:

> the failure to authorize or effect an act or transaction in compliance with the provisions of the corporate statute, the governing documents of the corporation, a corporate resolution, or any plan or agreement to which the corporation is a party, if and to the extent the failure would render the act or transaction void or voidable.

*Id.* § 22.501(4)(A).

CLIPOA claims that the "defective corporate act" is "the Board's entering into the Settlement Agreement" and that this act "is void or voidable due to a 'failure of authorization,' i.e., [CLIPOA]'s failure to have its bylaws recorded in the Official Public Records of Comal County, Texas at the time the agreement was approved." And according to the arbitration order, which CLIPOA asserts it was not contesting with its second motion to enforce the settlement agreement, the failure to authorize the settlement agreement was due to a failure to file the bylaws, as required by the Texas Property Code, before agreeing to the settlement.

The Texas Property Code, however, is not included within the RDCA's definition of "[c]orporate statute." *See id.* § 22.501(1). Thus, the failure to authorize the settlement agreement was not a "failure to authorize" as defined by the RDCA because it was not "the failure to authorize . . . an act . . . *in compliance with the provisions of the corporate statute . . .* if and to the extent the failure would render the act . . . void or voidable." *Id.* § 22.501(4)(A)

7

(emphasis added).[6] Nor was it a failure to authorize an act "in compliance with . . . the governing documents of the corporation, a corporate resolution, or any plan or agreement to which the corporation is a party." *Id.* Rather, as determined by the arbitration order, the "CLIPOA Board of Directors had no legal authority to act" due to a failure to comply with the Texas Property Code. And because the act was not a "failure to authorize" as defined by the RDCA, CLIPOA's entering into the settlement agreement was not a "defective corporate act"— i.e., an act that at the time it was purportedly taken would have been "within the power of a corporation to take under the corporate statute, but is void or voidable *due to a failure of authorization*." *Id.* § 22.501(2)(B) (emphasis added). For the same reason, the act was not "void or voidable *solely* as a result of a failure of authorization." *Id.* § 22.502 (emphasis added).[7]

---

[6] After citing the RDCA's definition of "[c]orporate statute" as including the Texas Business Organizations Code, CLIPOA notes that "[t]he Business Organizations provides that 'the affairs of a corporation are managed by a board of directors,'" quoting Section 22.201 of the Texas Business Organizations Code. But CLIPOA fails to explain how it was not "in compliance with" Section 22.201 such that there was a "failure to authorize" as defined by the RDCA. And the arbitration order denying CLIPOA's motion for reconsideration already rejected its argument that Section 22.201 controlled over the Texas Property Code's requirement that bylaws must be filed to have effect.

[7] The dissent argues that "the Board failed to authorize or effect the settlement agreement in conformity with its bylaws because the bylaws were not yet filed" and that this constitutes "'the failure to authorize or effect an act or transaction in compliance with the provisions of . . . the governing documents of the corporation.'" *Post* at ___ (quoting Tex. Bus. Orgs. Code § 22.501(4)(A)). But this misreads the meaning of "in compliance with." CLIPOA does not allege that any noncompliance with the provisions of the bylaws led to the failure to authorize the settlement agreement. Rather, the legal ineffectiveness of the bylaws due to CLIPOA not having filed the bylaws pursuant to the Texas Property Code, as determined by the arbitration order that has not been challenged on appeal, precluded the authorization of the settlement agreement that CLIPOA now seeks to ratify. The failure to authorize or effect an act or transaction because of noncompliance with the Texas Property Code, however, is not a "failure of authorization" as defined by the RDCA. *See* Tex. Bus. Orgs. Code § 22.501(4)(A). Thus, the entering into the settlement agreement would not be a "defective corporate act," as it is not an "act or transaction" that "is void or voidable due to a failure of authorization." *See id.* § 22.501(2)(B).

Accordingly, we conclude that the district court failed to correctly analyze or apply the law in concluding that the settlement agreement had been ratified under the RDCA. And because this was the sole ground CLIPOA asserted for the district court to enforce the settlement agreement, the district court therefore abused its discretion in granting CLIPOA's second motion to enforce the Rule 11 settlement agreement.

## CONCLUSION

For these reasons, we reverse the district court's order granting CLIPOA's second motion to enforce the Rule 11 settlement agreement and remand the case for further proceedings consistent with this opinion.

---

The dissent also references subpart (B) of the RDCA's definition of "failure of authorization" as further support. *Post* at ___ n.1. Before the trial court and this Court, however, CLIPOA neither cited nor relied on this subpart, which concerns "the failure of the board . . . to authorize or approve an act or transaction . . . that required the prior authorization or approval of the board." Tex. Bus. Orgs. Code § 22.501(4)(B). The dissent creates an argument on CLIPOA's behalf that "[a]bsent any legal authority to act, the Board could not have provided prior approval for its representative to enter into the settlement agreement." *Post* at ___ n.1. But even if the dissent's position correctly describes a "failure of authorization" under this subpart, CLIPOA's resolution ratifying the alleged defective corporate act of the settlement agreement does not discuss a representative or the board's prior approval for its representative. *See* Tex. Bus. Orgs. Code § 22.503(a)(3) (requiring resolution to state "the nature of the failure of authorization with respect to each defective corporate act to be ratified"). Rather, CLIPOA's resolution merely states, as relevant here, "The Settlement Agreement . . . and all of the terms and conditions set forth therein, are hereby ratified and approved" and "The failure to file the updated Bylaws of the Association prior to the negotiation of the Settlement Agreement in the Easement Litigation shall not be an impediment to the enforceability of the Settlement Agreement in the Easement Litigation, and said Settlement Agreement is hereby approved *ab initio*, retroactively, and effective as of February 1, 2017."

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Triana, and Smith
  Dissenting Opinion by Justice Triana

Reversed and Remanded

Filed:  February 25, 2022